**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREDERICK WILLIAM
CORDS, JR.,

                Petitioner,           Case No. 2:24-cv-10992

v.                          Hon. Brandy R. McMillion
                                  United States District Court Judge

GARY MINIARD,

                Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS* (ECF NO. 1)

Petitioner Frederick William Cords, Jr., ("Cords"), formally incarcerated at Central Michigan Correction Facility in St. Louis, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1.[1] Cords was convicted of illegally obtaining $50,000 or more, but less than $100,000, from a vulnerable adult, and being a fourth felony habitual offender, following a jury trial in the Charlevoix County Circuit Court. ECF No. 11-12, PageID.1399-1402; Mich. Comp. Laws § 750.174a(6)(a); Mich. Comp. Laws § 769.12. He now challenges

---

[1] Since the date of filing Cords has been moved to the Richard A. Handlon Correction Facility in Ionia, MI. *See* ECF No. 13.

his jury conviction on various federal constitutional grounds.  For the following reasons, the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

## I.

The material facts from Petitioner's conviction are gleaned from the Michigan Court of Appeals' opinion affirming Petitioner's conviction on his appeal of right, *see People v. Cords*, No. 335865, 2018 WL 2323838, at *1-2 (Mich. Ct. App. May 22, 2018), which is presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Petitioner met Merlin Dwaine Roberts ("Mr. Roberts") in 2012.  Mr. Roberts was in his eighties at the time when the two of them became friends.  *Cords*, 2018 WL 2323838, at *1.  Then Petitioner started asking Mr. Roberts for money.  *Id.*  Petitioner told Mr. Roberts that he needed the money for various reasons, including maintaining his electricity, heat, and cellular telephone.  *Id.*

From 2012 to 2014, Roberts gave or loaned Petitioner substantial sums of money using several methods of transfer.  *Id.*  Petitioner told Mr. Roberts that he would pay him back, but for the most part failed to do so.  *Id.*  During the time Mr. Roberts was giving money to Petitioner, 25 balance inquiries were made on his account.  Mr. Roberts also made out several checks directly to Petitioner, totaling $37,100.  *See* ECF No. 11-9, PageID.1154.  Additional checks were written by the victim to Petitioner's son in the amount of $12,500.  *Id.*  During the period of his

relationship with Petitioner, 20 checks were made out to "cash," totaling $8,360. *See* ECF No. 11-9, PageID.1156. Four of the checks were for withdrawals in excess of $1,000. *Id.* Receipts for funds withdrawn without a check over the course of Roberts's relationship with Petitioner totaled $8,465. *Id.*

More than once, Petitioner came to Mr. Roberts's house at 10:00 to 11:00 p.m., and would bang on the door or window to request that the two men go to an ATM. *See* ECF No. 11-9, PageID.1028. When Mr. Roberts let Petitioner into the house, Petitioner would not leave until Mr. Roberts turned over his debit card, despite any objections. *Id.* at PageID.1029. Petitioner also persuaded Mr. Roberts to give him the PIN number. The court found that Petitioner would sometimes go with Mr. Roberts to the ATM, while other times he went alone with the victim's card and PIN number. *See Cords*, 2018 WL 2323838, at \*1. Furthermore, the court also identified that accounting for overdraft fees and balance-inquiry fees, ATM withdrawals from 2012 through 2014 amounted to $24,394.50. *Id.* No ATM withdrawals were made in 2010 or 2011. *Id.*

At some point, Mr. Roberts inherited $82,172.42, but within one month, his account balance was reduced to $4.65 because of several ATM withdrawals. *See* ECF No. 11-9, PageID.1142-1143; *Cords*, 2018 WL 2323838, at \*1. Petitioner also asked Mr. Roberts to accompany him to Kalkaska to purchase a truck, identifying Mr. Roberts as his grandfather when speaking to the dealer. *See* ECF No. 11-9,

PageID.1020; *Cords*, 2018 WL 2323838, at *1. Mr. Roberts made the $300 down payment and obtained a loan for $17,000 in his own name to help pay for the truck; Petitioner made only two payments on the loan. *Id.* at PageID.1021-1022.

In July 2014, Mr. Roberts contacted his daughter, Tamara Guilbault, to request financial assistance. It was then that Guilbault learned that there were several overdrafts on her father's account. *Cords*, 2018 WL 2323838, at *2. She was added to her father's account shortly afterwards. *Id.* Guilbault did not learn about Petitioner until later, when Roberts called Guilbault again, asking for $75 for Petitioner. *Id.* Petitioner was advised to direct future requests for money to Ms. Guilbault, and Mr. Roberts stopped answering Petitioner's calls. *Id.* Guilbault arranged for the repossession of the truck that Mr. Roberts helped Petitioner purchase to satisfy the remaining loan balance. *Id.* The ATM withdrawals stopped from then on through the entirety of 2016. *Cords*, 2018 WL 2323838, at *2.

A services specialist[2] for the Adult Protective Services Division of the Department of Health and Human Services ("DHHS") was made aware of concerns that Petitioner was financially exploiting Mr. Roberts. When she met the victim, he appeared to be confused about his financial circumstances. *See* ECF No. 11-9, PageID.1090. She admitted that the victim appeared to be able to function

---

[2] The Court notes the services specialist will be referred to as "specialist" moving forward within the opinion.

independently in other areas, in that he could drive, prepare his own lunches, and go out to eat for breakfast and dinner. *Id.* Because of his advanced age, the specialist determined that Mr. Roberts was a "vulnerable adult." *Id.* at PageID.1091. The specialist believed that the victim was capable of making gifts and loans of money and notified the police, who began a criminal investigation into Petitioner's conduct. *See id.* at PageID.1096.

As a result of his conduct, Petitioner was charged and convicted of illegally obtaining $50,000 or more, but less than $100,000, from a vulnerable adult in violation of Mich. Comp. Law § 750.174a(6)(a). *See* ECF No. 11-12, PageID.1399-1400; ECF No. 11-25, PageID.1918; ECF No. 11-26, PageID.1927. Petitioner's conviction was affirmed on his direct appeal. *People v. Cords*, 2018 WL 2323838 (Mich. Ct. App. May 22, 2018), *lv. den.* 503 Mich. 946, 922 N.W.2d 127 (2019). Petitioner then filed a post-conviction motion for relief from judgment with the trial court. *See* ECF No. 11-29, PageID.2677. Among the claims raised was a claim that his retained trial counsel was ineffective for advising him to withdraw a guilty plea that he made prior to trial while represented by his initial court-appointed attorney. *Id.* at PageID.2678. The trial judge ordered an evidentiary hearing on the ineffective assistance of trial counsel claim but denied the other claims. *People v. Cords,* No. 15-009612-FH (Charlevoix Cty. Cir. Ct., July 7, 2020); ECF No. 11-30, PageID.2898-2899. The Michigan appellate courts denied Petitioner leave to appeal

this order. *People v. Cords*, No. 355748 (Mich. Ct. App. Apr. 15, 2021); *lv. den.* 509 Mich. 855, 969 N.W.2d 60 (2022).

In response to the prosecution's motion, the judge subsequently vacated the order granting an evidentiary hearing and dismissed Petitioner's remaining ineffective assistance of counsel claim. *People v. Cords,* No. 15-009612-FH (Charlevoix Cty. Cir. Ct., Apr. 8, 2021); ECF No. 11-30, PageID.2903-2905. The Michigan Court of Appeals denied Petitioner leave to appeal. *People v. Cords*, No. 357246 (Mich. Ct. App. July 15, 2021); ECF No. 11-30, PageID.2830. In lieu of granting leave to appeal, the Michigan Supreme Court remanded the matter back to the Michigan Court of Appeals for further consideration. *People v. Cords*, 509 Mich. 854, 969 N.W.2d 64 (2022).

On remand, the Michigan Court of Appeals ordered an interlocutory remand to the trial court for an evidentiary hearing pursuant to *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973) on Petitioner's ineffective assistance of counsel claim. *People v. Cords*, No. 357246 (Mich. Ct. App. June 28, 2022); ECF No. 11-30, PageID.3279. A *Ginther* hearing was conducted on Petitioner's ineffective assistance of counsel claim on August 1, 2022 in the trial court after which the judge issued an opinion denying the claim and Petitioner's motion for relief from judgment. *People v. Cords,* No. 15-009612-FH (Charlevoix Cty. Cir. Ct., Sep. 6, 2022); ECF No. 11-25. The Michigan appellate courts denied Petitioner leave to

6

appeal.  *People v. Cords*, No. 357246, 2023 WL 4043774 (Mich. Ct. App. June 15, 2023), *lv. den.*, 513 Mich. 998, 1 N.W.3d 253 (2024).

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at

7

410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 578 U.S. 113, 118 (2016).

### III.

Petitioner now seeks habeas relief on the following grounds: (1) the evidence was insufficient to convict, (2) the trial judge erred in failing to direct a verdict of acquittal, and (3) retained substitute trial counsel was ineffective for tricking Petitioner into withdrawing his guilty plea that had been negotiated by his first court-appointed attorney and having the case go to trial. *See generally* ECF No. 1. The Court will address each issue in turn.

## A.    SUFFICIENCY OF EVIDENCE/DIRECTED VERDICT CLAIMS.

In his first claim, Petitioner alleges that there was insufficient evidence to convict him.  *See* ECF No. 1, PageID.27-31.  In his second related claim, Petitioner argues the judge erred in failing to grant his motion for a directed verdict of acquittal.  *See id.* at PageID.23-26.  The two claims are related because Petitioner's claim involving the trial court's failure to direct a verdict of acquittal should be construed as an attack on the sufficiency of the evidence.  *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002).[3]

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  *See Herrea v. Collins*, 506 U.S. 390, 401 (1993) (quoting *Jackson*, 443 U.S. at 318-19); *see also United States v. Boring*, 557 F.3d 707, 710-11 (6th Cir. 2009).  Instead, the relevant inquiry is

---

[3] To the extent that Petitioner alleges that the trial judge failed to follow Michigan law when he failed to direct a verdict of acquittal, this is non-cognizable on habeas review because it involves an issue of state law.  *See King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001).

9

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the requisite elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court gives circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted)). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

More importantly, a federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). This Court may only award habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *Id.* "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner argues is that there was insufficient evidence to establish that the victim was a "vulnerable adult," within the meaning of MICH. COMP. LAWS § 750.145m(u)(*i*), to sustain his conviction. *See* ECF No. 1, PageID.27. The Court disagrees.

Petitioner was convicted under MICH. COMP. LAWS § 750.174a, which requires the prosecution to prove that the victim was a "vulnerable adult" and that the defendant knew or had reason to know that the victim was a vulnerable adult.

11

*People v. Haynes*, 980 N.W.2d 66, 81 (2021).  Michigan's Legislature has defined a vulnerable adult to be an "individual age 18 or over who, because of age, developmental disability, mental illness, or physical disability requires supervision or personal care or lacks the personal and social skills required to live independently."  *Id.* (quoting MICH. COMP. LAWS § 750.145m(u)(*i*)).  To establish that a person was a vulnerable adult, a prosecutor must show that the four personal characteristics listed under the statute, age, developmental disability, mental illness, and physical disability, "affect the individual in such a way that the individual (a) requires supervision, (b) requires personal care, or [(c)] lacks the personal and social skills required to live independently."  *Id.* at 418 (quoting *People v. Cline*, 741 N.W.2d 563, 570 (2007)).

As the Michigan Court of Appeals indicated when rejecting Petitioner's claim, there was sufficient evidence that the victim was a vulnerable adult.  *Cords*, 2018 WL 2323838, at *4.  Mr. Roberts was 83 years old when he met Petitioner.  *Id.* at *3.  The services specialist testified that because of his age, Mr. Roberts was a vulnerable adult.  *Id.*; ECF No. 11-9, PageID.1091.  She also testified that Mr. Roberts appeared confused about his finances.  *Cords*, 2018 WL 2323838, at *3; ECF No. 11-9, PageID.1090.  Furthermore, the court also noted that a rational jury could have found Mr. Roberts to be a vulnerable adult by virtue of the fact that he allowed Petitioner, who was not a long-time friend or business partner, to go with

12

him ATMs, to enter his house in the late hours of the night, and to use the victim's ATM card and associated PIN number without the victim's supervision. *Cords*, 2018 WL 2323838, at *3.

Although the court acknowledged that the victim was able to live independently on his own from 2012 to 2014, otherwise functioned appropriately without assistance, and was even capable of making gifts or loans of money, the court rejected the idea that this meant that the victim "was incapable of going too far in doing so, requiring some supervision over his money." *Cords*, 2018 WL 2323838, at *3. The court further noted that the relevant definition of a "vulnerable adult" is "[a]n individual age 18 or over who, because of age ... requires supervision *or* personal care *or* lacks the personal and social skills required to live independently." *Id.* (quoting MICH. COMP. LAWS § 750.145m(u)(*i*)) (emphasis in original). The Michigan Court of Appeals noted that: "The word 'or' is a disjunctive term indicating a choice between alternatives." *Id.* (quoting *Stock Bldg. Supply, LLC v. Crosswinds Communities, Inc.*, 893 N.W.2d 165, 173 (Mich. Ct. App. 2016) (quotation marks and citations omitted)). That was enough, as the court found, to sustain Petitioner's conviction based on the evidence presented during trial that the victim needed financial supervision, regardless of his ability to live independently. *Id.*

13

The court also rejected Petitioner's related claim that there was no evidence to demonstrate that Mr. Roberts was vulnerable for the entire time that defendant knew him. *Id.* at *3. Although the services specialist could not definitively ascertain when the victim became vulnerable, she did not believe his vulnerability had had a "sudden onset." Because a jury is permitted to make logical and reasonable inferences from the evidence, the jury could have determined that Mr. Roberts had become vulnerable in his advanced age, requiring financial supervision by 2012, if not sooner. *Id.* at *3.

Petitioner's argument that the victim could not have been vulnerable when he made gifts and loans to Petitioner if he was not also vulnerable when he made gifts to others was also rejected by the court. It concluded that these gifts were distinguishable because they were given to close family members and Mr. Roberts expressly testified that he did not expect these persons to pay him back. *See Cords*, 2018 WL 2323838, at *3. Additionally, there was no evidence to show that the victim's generosity toward these individuals "completely depleted his funds over the course of 40 years of friendship." *Id.* at *3. Based on those findings, the circumstantial evidence presented was sufficient to establish that Petitioner knew that Mr. Roberts was a vulnerable adult. *Id.* at *4.

Finally, there was sufficient evidence to conclude beyond a reasonable doubt that Petitioner defrauded the victim out of more than $50,000.00. The prosecution

14

presented documentary proof that Cords cashed $37,100 worth of checks from Roberts. *See* ECF No. 11-9, PageID.1154. Petitioner's son, Matthew Cords, cashed $12,500 worth. *Id.* In addition, Cords admitted to Trooper Jim Armstrong that he still owed Roberts $16,000 for the truck Mr. Roberts purchased in his name. *See* ECF No. 11-12, PageID.1276.

Moreover, there was substantial ATM activity between September 2012 and June 2014, which the evidence showed was attributable to Petitioner. In 2012, the total amount withdrawn was $4,276; in 2013, $17,353; and in 2014, $3,223, totaling $24,852. ECF No. 11-12, PageID.1274-76. According to Roberts and Guilbault, this type of ATM activity was inconsistent with Roberts's ATM habits. ECF No. 11-9, PageID.1026, 1125, 1128-29, 1161-62. Their testimony was corroborated by pre- and post-Petitioner era bank statements showing no ATM activity. *Id.* at PageID.1163, 1167. Mr. Roberts also testified that he gave Cords access to his ATM card and PIN, *see id.* at PageID.1028-30, something Petitioner admitted to Trooper Armstrong. ECF No. 10-12, PageID.1277.

Under *Williams v. Taylor*, 529 U.S. 392 (2000), this Court concludes that the Michigan Court of Appeals' rejection of Petitioner's sufficiency of evidence claim was reasonable. Therefore, Petitioner is not entitled to habeas relief on his first or second claims.

## B.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Petitioner claims that his retained counsel was ineffective for advising Petitioner to withdraw a guilty plea to a reduced charge as part of a plea bargain that had been negotiated by his first counsel, who was court-appointed.[4] *See* ECF No. 1, PageID.19-22.  The Court also disagrees with Petitioner's contentions.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 163 (2012); *see also Missouri v. Frye,* 566 U.S. 134, 143-44 (2012).  Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel."  *Lafler,* 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he or she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, *i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. *See Miller v. Burgess*, No. 2:20-cv-12625, 2025 WL 2245133, at* 8 (E.D. Mich. Aug.

---

[4] The material facts underlying Petitioner's ineffective assistance of counsel claim are gleaned from the Michigan Court of Appeals' opinion affirming the trial judge's opinion denying Petitioner's post-conviction motion for relief from judgment, *see People v. Cords*, No. 357246, 2023 WL 4043774, at *1-3 (Mich. Ct. App. June 15, 2023), which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See, e.g.*, *Simpson v. Warren,* 662 F. Supp. 2d 835, 841 (E.D. Mich. 2009).

6, 2025).  The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed.  *Lafler,* 566 U.S. at 164.  In addition, a court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action.  *Id.* at 171.

Although Petitioner claims he hired Mr. Klawuhn solely for sentence mitigation, Mr. Klawuhn testified that Petitioner hired him to withdraw his guilty plea because Petitioner told him he was innocent.  *See* ECF No. 11-21, PageID.1828.  The judge who presided over the *Ginther* hearing chose to credit Mr. Klawuhn's testimony and specifically found Petitioner's testimony not to be credible.  *See* ECF No. 11-25, PageID.1921.

While the ultimate question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts underlying such an analysis are accorded the presumption of correctness in federal habeas proceedings.  *See Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000).  Especially when credibility determinations are involved.  *See, e.g.*, *Mix v. Robinson,* 64 F. App'x 952, 956 (6th Cir. 2003).  The presumption of correctness "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting

17

evidence." *McPherson v. Woods*, 506 F. App'x 379, 387 (6th Cir. 2012). In order to overturn this presumption of correctness, a habeas petitioner must either show that the record as a whole did not support the factual determination or must prove by clear and convincing evidence that the factual determination was erroneous. *See Poole v. Perini,* 659 F. 2d 730, 736 (6th Cir. 1981).

"In he-said, he-said cases like this one" involving an allegation of ineffective assistance of counsel, a "factfinder does not clearly err in picking one 'he' over the other so long as there is support for each account." *Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016). There was support for Mr. Klawuhn's testimony that Petitioner hired him to withdraw his guilty plea because Petitioner claimed to be innocent of the charge. The trial judge was in the best position to judge the credibility of the various witnesses and chose to credit Mr. Klawuhn's account. *Id.*

The Supreme Court has indicated that "[a]lthough a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives[.]" with respect to the plea-bargaining process. *Burt v. Titlow*, 571 U.S. 12, 22 (2013). The fact that Petitioner decided to fire his first attorney, who had negotiated the plea bargain, and hire Mr. Klawuhn strongly suggests that Petitioner had second thoughts about confessing his guilt in open court. *Id.* at 20. That conclusion is further bolstered by Petitioner's assertions of innocence at his subsequent trial. *Id.* Petitioner's first attorney had negotiated a favorable plea

18

bargain to which Petitioner initially pleaded guilty, but Petitioner subsequently hired Mr. Klawuhn, who moved to withdraw Petitioner's guilty plea.  Indeed, something caused Petitioner both to fire his first attorney and then to hire Klawuhn, who moved to withdraw Petitioner's guilty plea and then to assert his innocence at trial.  "If that something was not a desire to assert innocence, it is difficult to imagine what it was, and [Petitioner] does not offer an alternative theory."  *Id.* at 21.  Accepting as true the state court's factual determination that Petitioner told Klawuhn that he was innocent, the state courts' reasonably determined that Mr. Klawuhn acted reasonably in moving to withdraw Petitioner's plea, given that Petitioner claimed he was innocent.  *Id.* at 22.

Petitioner's claim that he did not want his retained counsel to move to withdraw his guilty plea is further suspect, in light of the fact that he did not raise this claim on his appeal of right, but raised it only for the first time in his post-conviction motion for relief from judgment.  *See* ECF No. 11-14, PageID.1446; ECF No. 11-28, PageID.2525; ECF No. 11-29, PageID.2817-2819; *see, e.g.*, *Torres v. MacLaren*, 184 F. Supp. 3d 587, 594 (E.D. Mich. 2016), *rev'd on other grds sub nom.*, *Torres v. Bauman*, 677 F. App'x 300 (6th Cir. 2017) (petitioner's affidavit that trial counsel was ineffective in advising him to reject plea offer not credible where petitioner did not raise this claim on his direct appeal and did not explain why he did not attempt to raise the claim in his *pro per* application for leave to appeal to the

19

Michigan Supreme Court after his appellate counsel failed to raise the claim before the Michigan Court of Appeals).

Finally, Petitioner's continued assertions of innocence before this Court on habeas review, after having been convicted, further supports the state courts' determination that Petitioner failed to show that he wished to maintain his guilty plea, to establish that he was prejudiced by counsel's alleged deficiencies in moving to withdraw the guilty plea. *See United States v. Willoughby*, 144 F. Supp. 3d 935, 940 (N.D. Ohio 2015) (defendant failed to show a reasonable probability he would have pled guilty absent counsel's alleged error in failing to explore the range of penalties with him, where defendant maintained his innocence on post-conviction review). Therefore, the Court finds Petitioner is not entitled to habeas relief on his third claim.

## IV.

Accordingly, the petition for writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE**. The Court also **DENIES A CERTIFICATE OF APPEALABILITY,**[5] as Petitioner failed to make a substantial showing of the

---

[5] In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Error! Main Document Only.When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court

denial of a federal constitutional right.  However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal.  *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).  Therefore, Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

  ***This is a final order that closes this case.***

  **IT IS SO ORDERED.**

Dated: May 8, 2026          s/Brandy R. McMillion
  Detroit, Michigan        HON. BRANDY R. MCMILLION
                United States District Judge

---

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

21